*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* B. D. GAITHER, Minor.

UNPUBLISHED
May 23, 2025
9:38 AM

No. 371707
Wayne Circuit Court
Family Division
LC No. 2023-000083-NA

*In re* CLANTON/COWIN/GAITHER, Minors.

No. 373560
Wayne Circuit Court
Family Division
LC No. 2023-000083-NA

Before: WALLACE, P.J., and RICK and GARRETT, JJ.

PER CURIAM.

Petitioner sought termination of respondents' parental rights after respondent-mother's continued relationship with an abusive partner despite multiple incidents involving domestic violence resulted in her oldest child sustaining life-threatening injuries. In these consolidated appeals,[1] respondents appeal by right the trial court's order terminating their parental rights under MCL 712A.19b(3)(g) (failure to provide proper care or custody), (j) (reasonable likelihood of harm if child returned to parent), and (k) (parent abused the child or a sibling). The trial court also terminated respondent-mother's parental rights under MCL 712A.19b(3)(a) (desertion). We affirm the trial court's order terminating respondent-mother's parental rights in Docket No. 373560. Because the trial court failed to make any factual findings supporting the termination of respondent-father's parental rights in Docket No. 371707, we vacate in part the November 28,

---

[1] *In re B D Gaither Minor*, unpublished order of the Court of Appeals, entered December 11, 2024 (Docket Nos. 371707 and 373560).

2023 order and the May 7, 2024 order with respect to respondent-father only and remand for further proceedings.

## I. BACKGROUND

Respondent-mother has four children with three different fathers. Docket No. 373560 pertains to the trial court's termination of her parental rights to all four children. Respondent-father is the father of respondent-mother's oldest child, BDG. Docket No. 371707 pertains to the trial court's termination of his parental rights to BDG. The trial court also terminated the parental rights of A. Cowin, the father of respondent-mother's youngest children, ADC and SDC, and the parental rights of J. Harris, the father of respondent-mother's other child, VEC. Neither Cowin nor Harris has appealed the order terminating his parental rights.

Respondent-mother and Cowin had a violent relationship. She admitted that he threatened to kill her and the children on multiple occasions. In 2019, Cowin stabbed respondent-mother with a butter knife in BDG's presence.[2] The knife pierced her liver, requiring her to undergo surgery. Children's Protective Services (CPS) investigated, and respondent-mother allowed Cowin to continue living with her and the children during the investigation. Respondent-mother and Cowin declined to participate in services, and respondent-mother declined to pursue criminal charges against Cowin.

In 2020, Cowin stabbed respondent-mother in her head and hand with a pocketknife in the presence of all the children. She was transported to the hospital, and CPS again investigated. She received a referral to a shelter following her discharge from the hospital. She stayed at the shelter only briefly before returning home with the children. Cowin was arrested and released on bond. A condition of his bond was that he have no contact with respondent-mother. Despite knowledge of that condition, respondent-mother resumed residing with him and declined to pursue criminal charges against him. Cowin told her that "they" could not force her to pursue charges. Petitioner offered respondent-mother services that included domestic violence therapy and parenting classes, but she declined.

In late November 2022, respondent-mother called the police after she and Cowin were involved in another altercation. She and the children went to a shelter where they stayed briefly before they again returned to the family home where they resided with Cowin. A few weeks later, on December 7, 2022, Cowin began exhibiting strange behavior and yelling at the children. She told the children to stay away from him and to remain in their bedrooms. Later that day, she signaled for the older two children to leave the home, and she left the residence with the younger children shortly thereafter. As respondent-mother and the four children were walking down the street, Cowin sped toward them in the family vehicle. Respondent-mother was able to push VEC, ADC, and SDC out of the way, but Cowin struck her and BDG with the vehicle before he got out of the vehicle and fled the scene on foot. After the incident, BDG was "folded up" under the

---

[2] The record reflects that respondent-mother testified that Cowin stabbed her with a butter knife, but the trial court stated in its November 28, 2023 order that Cowin stabbed her with a butcher knife. It is unclear which version of the incident is correct.

vehicle. Respondent-mother and BDG were transported by ambulance to the hospital. Respondent-mother suffered a broken right leg, but BDG suffered far more extensive injuries, including a partially broken neck, blood in her chest cavity, a left femur fracture, a pelvic fracture, and a broken jaw. She underwent surgery to repair a cranial cervical disjunction, meaning that her spine was detached from her head and body, but her blood vessels were still attached. She was placed on a ventilator and hospitalized for three months. As a result of the incident, the prosecutor charged Cowin with five counts of assault with intent to commit murder, five counts of felonious assault, and two counts of second-degree child abuse.

Petitioner petitioned to terminate the parental rights of Cowin, Harris, and respondent-mother.[3] The petition alleged that respondent-mother failed to protect the children from Cowin because she continued to live with him despite his violent tendencies. Respondent-father, BDG's father, was not named as a respondent in the initial petition.[4] At the time that petitioner filed the initial petition, BDG was still on a ventilator in the hospital, and hospital social workers indicated that they were unable to locate a long-term acute care facility for her because of her age and health insurance. Social workers also indicated that once BDG was weaned off the ventilator, she would have to undergo intensive rehabilitation. Although respondent-father initially indicated a willingness to care for BDG, he failed to visit her at the hospital or complete the training necessary for her care. Accordingly, petitioner filed an amended petition to terminate his parental rights along with those of respondent-mother, Cowin, and Harris. Petitioner's primary allegation against respondent-father was that he abandoned BDG by failing to provide any care for her before and after the December 7, 2022 incident.

The case proceeded to a combined adjudication and statutory-grounds hearing.[5] At the conclusion of the hearing, the trial court assumed jurisdiction over the children and stated on the record that clear and convincing evidence supported the termination of respondent-mother's and respondent-father's parental rights under MCL 712A.19b(3)(a), (b) (physical injury), (g), (j), and (k). Contrary to its oral ruling, the trial court's order entered following the hearing indicated that the evidence supported termination of respondent-mother's parental rights under MCL 712A.19b(3)(a), (g), (j), and (k) and respondent-father's parental rights under MCL 712A.19b(3)(g), (j), and (k). Thereafter, the trial court held a best-interests hearing, following

---

[3] The petition referenced several subsections of MCL 712A.19b(3) without specifying the parent or parents to which each subsection applied.

[4] Respondent-father indicated that he was not aware that BDG had been exposed to domestic violence.

[5] We note that the trial court erred by holding a combined adjudication and statutory-grounds hearing. This Court has determined that the court rules required the trial court to first hold an adjudication trial to determine whether the court could properly exercise jurisdiction over the children. See *In re Mota*, 334 Mich App 300, 315; 964 NW2d 881 (2020). Then, upon finding that jurisdiction was established, the trial court was required to hold a dispositional hearing at which it could consider any evidence properly introduced at the adjudication trial along with any additional relevant evidence. See *id*. Despite the procedural error, neither respondent challenges the procedure utilized on appeal.

which it determined that it was in the children's best interests to terminate both respondents' parental rights. This appeal followed.

## II. STANDARDS OF REVIEW AND LEGAL PRINCIPLES

"To terminate parental rights, the trial court must find that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been proved by clear and convincing evidence." *In re Ellis*, 294 Mich App 30, 32; 817 NW2d 111 (2011). We review for clear error the trial court's determination that clear and convincing evidence supported a basis for termination. *In re Olive/Metts Minors*, 297 Mich App 35, 40; 823 NW2d 144 (2012). "A trial court's decision is clearly erroneous if although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *Id*. at 41 (quotation marks, brackets, and citation omitted). "This Court gives deference to a trial court's special opportunity to judge the weight of the evidence and the credibility of the witnesses who appear before it." *In re TK*, 306 Mich App 698, 710; 859 NW2d 208 (2014).

If the trial court determines that clear and convincing evidence supports a statutory ground for termination, and " 'that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made.' " *In re Ellis*, 294 Mich App at 32-33, citing MCL 712A.19b(5). Petitioner must establish that termination is in the child's best interests by a preponderance of the evidence. *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). We review for clear error the trial court's best-interests determination. *In re Pederson*, 331 Mich App 445, 476; 951 NW2d 704 (2020).

## III. DOCKET NO. 371707

Respondent-father argues that the trial court clearly erred by determining that the evidence supported the statutory grounds for termination. He also contends that termination of his parental rights was not in BDG's best interests. As previously discussed, at the conclusion of the combined adjudication and statutory-grounds hearing, trial court stated that clear and convincing evidence supported terminating respondent-father's parental rights under MCL 712A.19b(3)(a), (b), (g), (j), and (k), but the court's written order stated that termination was proper under MCL 712A.19b(3)(g), (j), and (k). Neither the trial court's oral ruling nor its written order contained any factual findings pertaining to respondent-father. MCR 3.977(I)(1) required the trial court to make factual findings on the record or in writing. That provision states, "The court shall state on the record or in writing its findings of fact and conclusions of law." Further, this Court recently stated, "[B]efore parental rights may be terminated under the juvenile code, the court must make findings of fact, state conclusions of law and identify the statutory basis for the order." *In re Pawloski*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 372145); slip op at 5 (quotation marks and citation omitted). Because the trial court failed to make any findings of fact supporting its determination that the evidence satisfied a statutory basis for termination, we vacate in part the trial court's November 28, 2023 order following the adjudication and statutory-grounds hearing with respect to respondent-father only and remand for the trial court to make findings of fact in support of at least one statutory basis for terminating respondent-father's parental rights. Having vacated the trial court's statutory-grounds determination with respect to respondent-father,

-4-

we likewise vacate in part the May 7, 2024 order terminating respondent-father's parental rights only.

## IV. DOCKET NO. 373560

Respondent-mother argues that the trial court clearly erred by determining that clear and convincing evidence supported the termination of her parental rights and by determining that termination was in the children's best interests. The record of the adjudication and statutory-grounds hearing indicates that the trial court found clear and convincing evidence to terminate respondent-mother's parental rights under the following subsections of MCL 712A.19b(3):

(a) The child has been deserted under either of the following circumstances . . . .

\* \* \*

(b) The child or a sibling of the child has suffered physical injury or physical or sexual abuse under 1 or more of the following circumstances:

(*i*) The parent's act caused the physical injury or physical or sexual abuse and the court finds that there is a reasonable likelihood that the child will suffer from injury or abuse in the foreseeable future if placed in the parent's home.

(*ii*) The parent who had the opportunity to prevent the physical injury or physical or sexual abuse failed to do so and the court finds that there is a reasonable likelihood that the child will suffer injury or abuse in the foreseeable future if placed in the parent's home.

(*iii*) A nonparent adult's act caused the physical injury or physical or sexual abuse and the court finds that there is a reasonable likelihood that the child will suffer from injury or abuse by the nonparent adult in the foreseeable future if placed in the parent's home.

\* \* \*

(g) The parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

\* \* \*

(j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if the child is returned to the home of the parent.

(k) The parent abused the child or a sibling of the child, the abuse included 1 or more of the following, and there is a reasonable likelihood that the child will be harmed if returned to the care of the parent . . . .

Although subsection (b)(*ii*) appears particularly appropriate with respect to respondent-mother, the trial court did not rely on that subsection in its written order regarding respondent-mother. "[A] court speaks through its written orders and judgments, not through its oral pronouncements." *In re Contempt of Henry*, 282 Mich App 656, 678; 765 NW2d 44 (2009). Moreover, the record does not support termination of respondent-mother's parental rights under subsections (a), (g), and (k). The record does, however, support termination of respondent-mother's parental rights under subsection (j), and "[o]nly one statutory ground need be established by clear and convincing evidence to terminate a respondent's parental rights, even if the court erroneously found sufficient evidence under other statutory grounds." *In re Ellis*, 294 Mich App at 32.

The proper focus of subsection (3)(j) is not only the risk of physical harm, but the risk of emotional harm as well. *In re Hudson*, 294 Mich App 261, 268; 817 NW2d 115 (2011). Although "it would be impermissible for a parent's parental rights to be terminated solely because he or she was a victim of domestic violence," termination is not improper if it was "based on the fact that respondent's own behaviors were directly harming the children or exposing them to harm." *In re Plump*, 294 Mich App 270, 273; 817 NW2d 119 (2011).

The record in this case demonstrates that respondent-mother's tolerance of Cowin's abuse over a period of years exposed her children to harm, which ultimately nearly killed her oldest child. She testified that Cowin told her on multiple occasions that he was going to kill her and her children and that she felt terrified when Cowin made such statements. She also testified that she did not feel like her children were safe around him. Cowin stabbed her on two occasions, resulting in three stabs wounds that required multiple surgeries. Although she testified that she frequently called shelters so that she and her children could leave the home, the record shows that she consistently left shelters after she and the children had been admitted, and she returned back home to Cowin. In fact, a few weeks before the December 7, 2022 incident, respondent-mother left a shelter to which she and the children had been transported after she called the police because of a domestic altercation involving Cowin. She returned home to Cowin, and he struck respondent-mother and BDG with the family vehicle within weeks thereafter.

Not only did respondent-mother refuse to stay at shelters and repeatedly returned home to Cowin, she also repeatedly declined to pursue criminal charges against him, declined to obtain a personal protection order against him, and declined to participate in services that were offered after CPS investigated the stabbing incidents. She testified that Cowin told her that nobody could force her to press charges against him. She also testified that her relationship with Cowin was better when she stayed quiet around him. Although respondent-mother treated with a therapist to help her cope with issues involving her relationship with Cowin, she continued to reside with him and tolerate his abuse. She admitted that she was "helpless" when she tried to cope with his temper and frustration.

Respondent-mother's relationship with Cowin did not end until the December 7, 2022 incident. The trial court properly rejected her argument that she could not have anticipated what occurred and was "blindsided." As the trial court noted, respondent-mother testified that Cowin repeatedly threatened to kill her and her children, which made her feel "terrified." The fact that she felt terrified indicates that she found his threats credible. The record also supports the trial court's determination that respondent-mother failed to demonstrate that she recognizes the danger

to which she subjected her children or that she is capable of protecting them from persons with whom she associates. In short, respondent-mother fails to appreciate that she was a part of the problem that ultimately led to the December 7, 2022 incident.

Further, the trial court did not clearly err by determining that termination of respondent-mother's parental rights was in the children's best interests. Although respondent-mother had a strong bond with her children and visits with them went well, BDG, ADC and SDC indicated that they did not want to return home to her. In fact, ADC and SDC expressed that they were scared of being in the home with VEC, who has begun to exhibit aggressive behavior and mental-health issues that resulted in either ADC or SDC suffering a burn wound. VEC was admitted to a residential facility to address concerns regarding his behavior and mental health. In addition, respondent-mother has begun experiencing blackouts, seizures, and auditory and visual hallucinations during which she hears voices and sees shadowy figures. The trial court expressed concern regarding whether respondent-mother is able to care for her own needs, much less her needs in addition to those of her children. Accordingly, the trial court did not clearly err by determining that terminating respondent-mother's parental rights was in the children's best interests.

## V. CONCLUSION

In Docket No. 373560, we affirm. In Docket No. 371707, we vacate in part the November 28, 2023 order and the May 7, 2024 order with respect to respondent-father only and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Randy J. Wallace
/s/ Michelle M. Rick
/s/ Kristina Robinson Garrett

-7-